UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON DEITZ, on behalf of himself and similarly situated employees | :<br>:<br>: |
| Plaintiff, | : 4:12-cv-00718-CCC<br>: |
| v. | : (Judge Conner)<br>: |
| BUDGET RENOVATIONS & ROOFING, INC., | :<br>:<br>: |
| Defendant. | : |

**<u>DEFENDANT'S RESPONSIVE BRIEF PURSUANT TO THE JUNE 5, 2012 ORDER</u>**

**COUNTER HISTORY OF THE CASE AND COUNTER STATEMENT OF FACTS[1]**

On April 17, 2012, Plaintiff Jason Deitz's counsel filed a Complaint in which he attempted to style this case as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and as an action under the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101 *et seq.* (the "PMWA"). Counsel filed Notices of Consent to Become Party Plaintiffs on behalf of Plaintiffs Deitz and Opt-In Plaintiff Eric Gallagher on May 7, 2012, and on behalf of Opt-In Plaintiffs Stephen Hornberger and Matthew Marcheski on May 14, 2012.

Following the May 15, 2012 service of the Complaint, an employee of Budget (on behalf of Budget) and Plaintiff Deitz (on behalf of the four Plaintiffs) commenced settlement discussions, which ultimately led to the execution of four written settlement agreements on or about May 24, 2012. As more fully set forth in Budget's Answer to Plaintiffs' Emergency Motion for Scheduling of an In-Person Conference to Address the Propriety and Validity of

---

[1] For additional case history and factual background, please refer to Defendant's Answer to Plaintiffs' Emergency Motion for Scheduling of an In-Person Conference to Address the Propriety and Validity of Defendant's Efforts to Settle this Action.

Defendant's Efforts to Settle this Action (the "Emergency Motion"), contrary to Counsel's assertion in his Brief, according to Plaintiff Deitz and the express written representations of all Plaintiffs in the settlement agreements, Plaintiffs conferred with their counsel before signing the agreements.

On May 25, 2012, following his receipt of Plaintiffs' instructions to discontinue this lawsuit, Plaintiffs' counsel instead filed the Emergency Motion. All four Plaintiffs communicated their displeasure with their attorney's actions and terminated their attorney-client relationships. In turn, counsel has filed Motions to withdraw as counsel to all Plaintiffs.

Following the in-person conference, the Court ordered briefs on the legal issue of whether FLSA collective action settlements require Court approval. Plaintiffs' counsel filed his brief on June 8, 2012. This Brief is Budget's response.

## COUNTERSTATEMENT OF THE QUESTIONS INVOLVED

I.  Whether Court approval of the settlement of a FLSA collective action is **required** if there is a "bona fide dispute as to liability"?

    (Suggested answer: No)

II. Whether a FLSA collective action should be dismissed once all of the individual FLSA claims are settled and there is no longer a "Plaintiff"?

    (Suggested answer: Yes)

## ARGUMENT

**I.  Court Approval Of The Settlement Of A Private FLSA Action Is Not Required If There Is A Bona Fide Dispute As To Liability**

Only Argument Section II (A) on pages 2 through 6 of Plaintiffs' counsel's Brief, contains any substantive arguments regarding the requirements, if any, for court approval of

FLSA settlements. Budget will address those arguments in the context of the specific issues listed above. As a preliminary matter, however, counsel's arguments on pages 7 through 15 of his brief can be disposed of summarily as follows.

### A.   What A Court May Do vs. What The Law Actually Requires A Court To Do Are Two Different Things

Much of counsel's Brief asserts an "everyone does it, so it must be right" argument, attempting to equate what counsel claims is "common practice" in some courts with a hard and fast legal requirement. (*See, generally,* counsel's Brief, pgs. 7-9 and Exhs. A, B & C). Counsel's argument fails for several reasons. First, as the Court noted during the conference, and as will be shown below, there is hardly unanimity among the Circuits and Districts on the question of whether Court approval of FLSA settlements is required – and the Third Circuit has not directly addressed the issue.[2] Second, the Orders counsel attached to his Brief add nothing to the equation because every one of those Orders appears to be a stipulated Order or an unopposed Order. There is no indication that any of the courts considered the question of whether court approval was required before signing the agreed-upon language submitted by counsel.[3]

### B.   This Case Is Not A Rule 23 Class Action

Pages 10 through 13 of counsel's brief and Exh. E relate exclusively to class actions under Fed. R. Civ. P. 23. As counsel has acknowledged, class action jurisprudence is not

---

[2] *But see Burke v. Wackenhut*, 2007 U.S. Dist. LEXIS 15169, *7 (M.D. Pa. March 5, 2007) ("It appears that there is a bona fide dispute over the facts which lead to liability in this case. In *dicta*, the Third Circuit has indicated that such disputes may be settled privately, without court approval.") This point is addressed in more detail, *infra*.

[3] Also, a number of the Orders do not reflect that the cases were actually FLSA collective actions, and at least one Order was entered in a class action under Fed. R. Civ P. 23 rather than in a FLSA collective action. *See* Exh. B, *Sisko v. Wegmans Food Markets, Inc.*, No. 3:06-cv-00433-JMM (M.D. Pa.).

binding on this or any court when considering whether there are any court approval requirements for collective action settlements.  Nevertheless, counsel has devoted a substantial portion of his brief trying to equate the procedures for the settlement of a Fed. R. Civ. P. 23 class action with the procedures for the settlement of a FLSA collective action under 29 U.S.C. § 216(b).  (*See* Plaintiffs' counsel's Brief, pgs. 10-14).  However, counsel then undermines his argument by writing:

> Stand-alone FLSA collective actions are procedurally different from Rule 23 class actions, primarily because an FLSA class is limited to those class members who affirmatively join (or "opt-in") to the lawsuit, while a Rule 23 class (upon certification) automatically includes all class members except those who affirmatively exclude themselves from (or "opt-out" of) the lawsuit. [citations omitted] . . . Several courts have cogently observed that FLSA settlement approval standards need not be as rigorous as Rule 23(e) standards because collective action settlements do not bind absent class members who never join the lawsuit. [citations omitted] . . . This observation is surely correct.

(Plaintiffs' counsel's Brief, pgs. 10-12).  Therefore, unlike a Fed. R. Civ. P. 23 class action in which the interests of absent class members must be considered, there is no reason for a court to "act[] as a fiduciary who must serve as a guardian of the rights of absent class members" in an "opt-in" FLSA collective action.  *In re GMC Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (addressing the court's role in assessing a Rule 23 class action settlement agreement).  Accordingly, Plaintiffs' counsel's Rule 23 analogy should be rejected.

      C.     **The *O'Neil* and *Gangi* Cases Do Not Address The Issue Presented In This Case**

Counsel's analysis begins and ends with *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946), for the general proposition that an employee cannot waive FLSA rights by private agreement with his employer.  However, the present case does not involve employee waivers of FLSA rights and the settlement agreements

4

do not require any of the Plaintiffs to waive their rights under the FLSA. The settlement agreements simply require the employees to discontinue their pursuit of disputed claims for overtime that arose out of their FLSA rights. This distinction is important. The issue in this case is not whether the FLSA applies to these employees or whether these employees can "opt out" of the requirements of the FLSA. The issue is simply whether these employees worked more than 40 hours in a given work week and, if so, whether Budget violated the terms of the FLSA by failing to pay FLSA-required overtime compensation for the extra hours. Those issues were the subject of a bona fide dispute between Plaintiffs and Budget. Consequently, neither *O'Neil* nor *Gangi* apply.

In *O'Neil*, the Court refused to enforce a release of FLSA claims on the ground that the releases were not "in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act," but rather, were mere waivers of liquidated damage claims. *Id*. at 712. Thus, in ruling that the FLSA prohibited general waivers of rights granted by the Act, the Court specifically left open the question of whether the FLSA would permit settlement of specific claims "if the settlement is made as the result of a bona fide dispute between the two parties." *Id*. at 714. In other words, *O'Neil* did not answer the question presented in this case: May an employer and an employee settle, without involving a court, the simple factual disputes over whether the employee worked more than 40 hours and whether the employer failed to pay overtime for those hours?

In *Gangi*, the Court partially answered the question *O'Neil* left open –but did not answer the question presented in the present case. The *Gangi* Court invalidated a settlement agreement that released the employer from liquidated damage claims even though there was a bona fide dispute **about whether the employees were covered by the FLSA**. The *Gangi* Court did not

address whether the settlement of a factual dispute over the number of hours worked required court approval.

> D. **The Portal-to-Portal Act And The Fair Labor Standards Amendments Invalidated Any Extension Of The *O'Neil* and *Gangi* Cases Beyond Their Facts**

Regardless of the impact of *O'Neil* and *Gangi* at the time they were written, their ultimate import was short-lived. In apparent reaction to those decisions, Congress enacted the Portal-to-Portal Act of 1947, 29 U.S.C. § 253, and the Fair Labor Standards Amendments of 1949, 29 U.S.C. §216(c). *See U.S. v. Allegheny-Ludlum Indus.*, 517 F.2d 826, 861-62 (5th Cir. 1975) (The Portal-to-Portal Act overruled *O'Neil* and *Gangi* and permits private settlements without court approval because to require court approval in every instance would burden the courts with "excessive and needless litigation" and encourage "champertous practices."); *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 625 (W.D. Tx. 2005) ("The legislative history demonstrates that Congress reacted to the decisions in *O'Neil* [and] *Gangi* . . . with great animus."); *Lignore v. Hosp. of the Univ. of Pa.*, 2007 U.S. Dist. LEXIS 32169, *9-*10 (E.D. Pa. 2007) ("[S]ubsequent amendments to the FLSA, namely, the Portal-to-Portal Act of 1947, 29 U.S.C. § 253, and the Fair Labor Standards Amendments of 1949, 29 U.S.C. § 216(c), opened the door to waiver of the rights granted under the law.")

In language that, admittedly, is not exceptionally clear, Section 253(a) of the Portal-to-Portal Act, 29 U.S.C. § 253(a) provides:

> (a) Compromise of certain existing claims under the Fair Labor Standards Act of 1938 . . .; limitations. Any cause of action under the Fair Labor Standards Act of 1948, as amended, . . . which accrued prior to the date of the enactment of this Act, or any action (whether instituted prior to or on or after the date of the enactment of this Act) to enforce such a cause of action, may hereafter be compromised in whole or in part, if there exists a bona fide dispute as to the amount payable by the employer to his employee; except that no such action or

6

> cause of action may be so compromised to the extent that such compromise is based on an hourly wage rate less than the minimum required under such Act, or on a payment for overtime at a rate less than one and one-half times such minimum hourly wage rate.

Following an extensive analysis of the legislative histories of the FLSA and Section 253(a) of the Portal-to-Portal Act, the *Martinez* court concluded that the Portal-to-Portal Act granted some limited relief to employers by allowing the compromise of nearly all then-existing FLSA claims without any additional procedural requirements that may have been imposed by the *O'Neil* and *Gangi* decisions. Obviously, the prompt settlement of those claims accrued to the benefit of the employees as well.

The *Martinez* court specifically recognized that the Portal-to-Portal Act did not fully answer the question left open by *O'Neil* and *Gangi* and Congress "left determination as to the possibility of compromising future FLSA claims to later consideration." *Martinez*, 361 F. Supp. 2d at 625.

Two years later, in an effort to further streamline the resolution of FLSA claims, Congress passed the Fair Labor Standards Amendments of 1949, which added Section 216(c) to the FLSA. Section 216(c) created a process by which FLSA cases could stay out of the courts by authorizing the Secretary of Labor:

> to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c). As Plaintiffs' counsel apparently does in the present case, some have interpreted Section 216(c) as establishing two exclusive means of resolving FLSA claims: (1) through action by the Secretary of Labor for the amount owed to the employee; or (2) through

the employee's own individual right of action under Section 216(b) for back wages, liquidated damages and attorney's fees. *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) (FLSA claims may be compromised only with the supervision of the Secretary of Labor or a court). Other courts, however, have followed a more reasoned approach. *See, e.g., United States v. Allegheny-Ludlum Indus., supra.*

Upon close examination, the "conflict" between *Allegheny-Ludlum* (Portal-to Portal Act permits purely private compromises of FLSA claims) and *Lynn's Food Stores* (FLSA claims may be compromised only with the supervision of the Secretary of Labor or a court) is easily explained – and, in fact, is not really a conflict at all. With very little analysis, the *Lynn's Food Stores* court simply quoted FLSA Section 216(c) and the highlights of the *O'Neil* and *Gangi* decisions. The court did not even mention, let alone analyze, the effect of the post- *O'Neil* and *Gangi* Portal-to-Portal Act or the Fair Labor Standards Amendments of 1949. Moreover, the dispute in *Lynn's Food Stores* was not about liability under the Act. Liability had already been determined by the Department of Labor. The *Lynn's Food Stores* litigation concerned the employer's bold and blatant attempts to circumvent the administrative process. Consequently, as recognized by the *Martinez* court, *Lynn's Food Stores* is an example of what one learns early in law school: bad facts make bad law.[4]

Despite the unique factual basis for the ruling in *Lynn's Food Stores*, some courts, without independent analysis, have blindly adopted the broad language used by the *Lynn's Food*

---

[4] Contrast the *Lynn's Food Stores* facts with the facts of this case. Plaintiff Deitz initiated settlement discussions with Budget, with all parties then working through individual settlement agreements that all parties concluded were fair and reasonable under the circumstances. No party to any of the executed settlement agreements has challenged the enforceability or propriety of those agreements. The only "party" that disagrees with the settlements is Plaintiffs' counsel, who was terminated after he attempted to undermine the settlement by disregarding his clients' instructions to discontinue this litigation and, instead, requesting an emergency conference with the Court.

8

*Stores* court. Plaintiffs' counsel has string-cited a large number of those cases in his Brief, as well as cases that either do not concern the FLSA or do not involve the issues present in this case. *See, e.g.*, *Taylor v. Progress Energy, Inc.*, 493 F.3d 454 (4th Cir. 2007) (case not on point – concerned a dispute under the Family Medical Leave Act; cited *Lynn's Food Stores* in *dicta* without analysis); *Walton v. United Consumers Club*, 786 F.2d 303 (7th Cir. 1986) (case not on point – concerned a settlement supervised by the Secretary of Labor; cited *Lynn's Food Stores* in *dicta* without analysis); *Baker v. D.A.R.A. II, Inc.*, 2008 U.S. Dist. LEXIS 81347 (D. Az. Sept. 23, 2008) (the holding did not reach the merits of whether court approval of FLSA settlements was required; cited *Lynn's Food Stores*, but ordered additional briefing); *Yue Zhou v. Wang's Rest.*, 2007 U.S. Dist. LEXIS 60683 (N.D. Cal. Aug. 8, 2007) (the holding only addressed a motion for attorneys' fees; cited *Lynn's Food Stores* in *dicta* without analysis); *Ferguson v. Upscale Saturday Night, Inc.*, 2006 U.S. Dist. LEXIS 63663 (M.D. Fla. 2006) (the parties settled their dispute during a settlement conference with the court and voluntarily sought court approval; no analysis of the issue); *Carey v. Space Coast Quality Lawn*, 2006 U.S. Dist. LEXIS 45957 (M.D. Fla. July 6, 2006) (court approved a joint motion to approve a FLSA settlement; cited *Lynn's Food* without analysis); *Cooks v. Osmose, Inc.*, 2004 U.S. Dist. LEXIS 29346 (court approved a joint motion to approve a FLSA settlement; cited *Lynn's Food* without analysis).[5]

---

[5] In addition, counsel has cited at least one case that actually supports Budget's position. *See, O'Connor v. United States*, 308 F.3d 1233 (Fed. Cir. 2002), in which the appellate court upheld a non-supervised FLSA settlement as a valid accord and satisfaction of a wage dispute under a union collective bargaining agreement. The court specifically rejected the application of *O'Neil* and *Gangi* in the context of a federal labor dispute.

### E. The *Martinez* Case Correctly Analyzed The FLSA Settlement Requirements And Should Be Followed

Budget believes the *Martinez* court's thorough analysis is on the mark and urges this Court to adopt that analysis and reasoning in the present case.[6] *See Martin v. Spring Break '83 Prod.*, 797 F. Supp. 2d 719, 730 (E.D. Cal. 2011):

> Plaintiffs and Defendants disagree whether the FLSA claim in this case could be settled privately through the Settlement Agreement. This Court does not have binding precedent to address the question of whether parties may privately settle a FLSA claim that includes a dispute over whether the plaintiff worked on the days for which it seeks unpaid wages. However, after careful review, this Court adopts the holding of the United States District Court for the Western District of Texas in *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005). In that case, after a thorough historical analysis of the FSLA, its amendments, and case law, the court concluded that "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances." *Id.* at 631. The court defined a bona fide dispute as "'an honest disagreement between employer and employee.'" *Id.* at 625 (*quoting* 12 Fed. Reg. 7655, 7669 (Nov. 18, 1947)). Furthermore, the court stated that the release need not mention the FLSA in order for the release to apply to FLSA claims because "'the remedy sought and settled [is] the precise remedy sought' in the litigation." *Id.* at 632 (quoting *Strozier v. General Motors Corp.*, 635 F.2d 424, 426 (5th Cir. 1981)).

Plaintiffs' counsel's only attack on the *Martinez* decision is that its author, Judge Rodriquez, later approved an FLSA settlement in *Sepulveda v. Southwest Business Corp.*, 2009 U.S. Dist. LEXIS 93072 (W.D. Tex. 2009). That assault misses the mark. First, *Sepulveda* involved a dispute over the applicability of the FLSA (*i.e.*, whether an employer-claimed exemption from the coverage of the Act applied), and not a dispute over its application, as in the

---

[6] Interestingly, the *Martinez* Court also noted that the Congressional motivation for enacting the Portal-to-Portal Act included the fact that "[i]n January 1947, 1,186 "portal suits" were filed in federal courts, as opposed to 727 in the six months prior." Martinez, 361 F. Supp. at 623-24. Recently, according to a Fortune magazine article available at http://management.fortune.cnn.com/2012/05/29/the-new-workplace-revolution-wage-and-hour-lawsuits/, there currently is an even larger epidemic of FLSA filings, as more than 7,000 FLSA collective actions were filed in federal court in 2011, an approximate 400% increase since 2000.

instant case.  Second, highlighting that distinction, in *Sepulveda*, Judge Rodriquez stood by his *Martinez* ruling:

> This Court has previously held that court approval is not required for private settlements of FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due.  *Martinez v. Bohls Bearing Co.*, 361 F. Supp. 2d 608, 630 (W.D. Tex. 2005).  However, the Court recognizes that this is a minority view.  Nevertheless, the Court finds it ironic that wage and hour disputes are required to be scrutinized for fairness when settlements of the most egregious race and gender discrimination claims are not.

*Sepulveda*, 2009 U.S. Dist. LEXIS 93072, *4-*5.

Other District Courts Likewise have expressed doubts as to the preclusion of private settlements under the FLSA.  *See, e.g., Bonnetti v. Embarq Mgmt.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009) ("First, there is a significant question as to whether [*Gangi*] and [*O'Neil*] -- the bedrocks upon which *Lynn's Food* . . . rest[s] -- are still apposite in light of various amendments to the FLSA in the last sixty-plus years.").

The *Martinez* court also considered the effect that requiring the blanket approval of all FLSA settlements would have on judicial resources:

> The same rationale [of preventing judicial backlog] supports extending the availability of purely private compromises and releases to the FLSA context.  Judicial caseloads, as well as the workload of the Wage and Hour Administration, would likely be swamped with unnecessary disputes, many dubious and with little evidence, that could not be finally settled without approval from either a court or the Secretary of Labor.  This surely cannot be what was intended by Congress when the FLSA was passed.  In fact, less than ten years after the passage of the FLSA, Congress amended the statute to provide for compromises of then-existing claims involving bona fide disputes.  Though Congress could have made the express availability of such compromises prospective, rather than purely retrospective, it did not prohibit such compromises.  Congress left this decision to "determination under other law."

*Martinez*, 361 F. Supp. 2d at 630-31.  The *Martinez* court concluded, as this Court should:

> "Congress has not closed the doors to the settlement of disputed questions of the [FLSA] and the Courts should not do so by judicial construction." *Atlantic Co. v. Broughton*, 146 F.2d 480, 485 (5th Cir. 1944) (Waller, J., dissenting).

11

> "Interminable litigation, stimulated by a contingent reward to attorneys, is necessitated" by the failure to permit private compromises and releases of FLSA claims involving bona fide disputes as to liability. *Walling [v. Portland Terminal Co.]*, 330 U.S. at 155 (Jackson, J., concurring). No court other than the Eleventh Circuit has expressly held that such a settlement is prohibited. A fair reading of the Fifth Circuit's decision in *Allegheny-Ludlum* and the Sixth Circuit's en banc decision in *Runyan [v. Nat'l Cash Register Corp.]* supports the view that such compromises are permissible. Therefore, the Court holds that, according to the language of the FLSA, its amendment by the Portal-to-Portal Act of 1947 and the Fair Labor Standards Amendments of 1949, and its interpretation in the case law, parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances.

*Id.* at 631.

F. **Although The Third Circuit Court Of Appeals Has Not Addressed The Specific Issue Now Before This Court, It Is Likely It Would Rule That There Is No Requirement For Court Approval Of FLSA Settlements When There Is A Bona Fide Dispute As To Liability**

As the Court noted during the conference, Judge Rambo believes the Third Circuit Court of Appeals has telegraphed that FLSA settlements are enforceable without court approval. *See Burke v. Wackenhut*, 2007 U.S. Dist. LEXIS 15169, *7 (M.D. Pa. March 5, 2007), in which Judge Rambo noted that the Third Circuit has written in *dicta* that when there is a bona fide dispute over the facts in a FLSA case, the dispute may be settled privately.

More recently, the Third Circuit issued another decision which, although not directly on point, indicates the leaning of the court with regard to the issue of court approval of FLSA settlements. In *Vilches v. Travelers Cos.*, 413 Fed. Appx. 487 (3d Cir. 2011), the Circuit Court ruled that a District Court's order directing the parties to arbitrate employees' FLSA claims was not unconscionable. The employees had signed a written employment agreement that made arbitration "the required, and exclusive, forum for the resolution of all employment disputes that may arise" pursuant to an enumerated list of federal statutes, and under "any other federal, state

12

or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment." *Id.* at 489. The employer unilaterally changed the arbitration clause to expressly bar any arbitration from being maintained as a collective action or a class action. In finding that the arbitration clause was not unconscionable, the court wrote:

> [Employees'] policy arguments are premised on the amorphous contention that arbitration would undermine the deterrent function of the FLSA. This contention is unavailing, however, since [Employees] failed to substantiate the view that arbitration will not adequately protect the financial interests of employees. Indeed, there is no "suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (citing *Johnson v. West Suburban Bank*, 225 F.3d 366, 377 (3d Cir. 2000)).

*Vilches*, 413 Fed. Appx. at 494. By allowing FLSA claims to be arbitrated rather than litigated, the court has taken the "supervision" of FLSA settlements out of the hands of the courts.[7]

## II. A Collective Action Should Be Dismissed Once All Of The Individual FLSA Claims Are Settled And There Is No Longer A "Plaintiff"

Citing *Symczyk v. Genesis Healthcare*, 656 F.3d 189, 192-93 (3d Cir. 2011), Plaintiffs' counsel seems to argue that the settlement with all Plaintiffs should not result in the dismissal of this case without providing **him** with the opportunity to "conditionally certify" the case as a

---

[7] As the Court requested, Budget's counsel have reviewed the New Jersey District Court cases the court noted during the conference. Those cases are not on-point as to the question of whether private settlements require judicial approval under the FLSA, its Amendments, and the Portal-to-Portal Act. In *Brumley v. Camin Cargo Control*, 2012 U.S. Dist. LEXIS 11702 (D.N.J. January 30, 2012), the issue before the court concerned the propriety of filing a FLSA settlement agreement under seal pursuant to a local rule of court. While the opinion touched upon private settlement agreements under the FLSA and suggested, in *dicta*, that private settlements may require court approval, the court did not rule on the issue. Likewise, in *Bredbenner v. Liberty Travel*, 2011 U.S. Dist. LEXIS 38663 (D.N.J. April 8, 2011), the court appeared to assume, but did not address whether, private FLSA settlement agreements required court approval. Most of the opinion related to class action issues. As noted previously in this brief, while the parties in a given case may have decided to proceed with court approval of a private settlement agreement, that does not mean court approval is **required**.

13

FLSA collective action. First, counsel is not a party to this case, and thus has no standing to seek to continue to prosecute the case. In addition, *Symczyk* has no application to this case because it involved a Fed R. Civ P 68 offer of judgment, which Mrs. Symczyk did not agree to accept. In contrast, the current matter involves a voluntary settlement, which **all** Plaintiffs desire to implement.

Finally, counsel attempts to distinguish between "individual" FLSA settlements and "collective action" FLSA settlements, reasoning that even if this Court finds that the former does not require judicial approval that the latter should. (Plaintiffs' counsel's Brief, pgs. 7-15). It is unclear why there should be a separate analysis as to each category of settlement and, in fact, the cases that Plaintiffs' counsel cites do not make a distinction between "individual" and "collective" actions or explain why they should be treated differently. But even if separate analyses generally would be appropriate, they would not be appropriate in this case because **all** parties to this dispute have agreed to settle.

**CONCLUSION**

For all the foregoing reasons, Budget requests the Court find that private settlement agreements under the FLSA addressing a bona fide dispute as to liability do not require judicial approval to be enforceable, and that this case be dismissed, with prejudice, pursuant to the duly-executed settlement agreements between Plaintiffs and Budget.

Respectfully submitted,

/s/Matthew Chabal, III
Matthew Chabal III, Esquire
Pa. Attorney I.D. No. 49926
Thomas J. Car, Esquire
Pa. Attorney I.D. No. 307100
**James Smith Dietterick & Connelly LLP**
Mail:	P.O. Box 650
	Hershey, PA 17033
Courier:	134 Sipe Avenue
	Hummelstown, PA 17036
Phone:	(717) 533-3280
Attorneys for Defendant Budget Renovations & Roofing, Inc.