IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON DEITZ on behalf of himself and similarly situated employees, | : : : | Case No. 4:12-CV-0718 |
| Plaintiff, | : : | (Judge Brann) |
| v. | : : : | |
| BUDGET RENOVATIONS AND ROOFING, INC., | : : : | |
| Defendant. | : | |

**MEMORANDUM**
May 29, 2013

Plaintiffs, who are proceeding pro se in this collective action for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, et seq, commenced this litigation on April 17, 2012. Compl., ECF No. 1. The parties seek court approval of a proposed settlement agreement.

**I.    Factual and Procedural Background**

Plaintiff Jason Deitz commenced this action alleging that he and other employees of defendant Budget Renovations & Roofing, Inc. ("Budget") were not paid for many of their working hours, including overtime premium compensation, in violation of 29 U.S.C. § 216(b) and 43 P.S. §§ 333.104, 231.36. Compl., ECF

1

No. 1.  Employees Eric Gallagher, Stephen Hornberger and Matthew Marchesk joined this lawsuit as party plaintiffs under Section 16(b) of the FLSA on May 7, 2012 and May 14, 2012.  ECF Nos. 4-5.

Prior to an answer or any responsive pleading by defendant, plaintiffs filed an Emergency Motion for the Scheduling of an In-Person conference to Address the Propriety and Validity of Defendant's Recent Efforts to Settle this Action, followed by a Motion to Withdraw as Attorney for Originating Plaintiff.  May 25, 2012, ECF No. 7; May 29, 2012, ECF No. 8.  Apparently without their counsel's knowledge, plaintiffs engaged in settlement talks with defendant and then requested that their counsel withdraw from the lawsuit so they could effectuate the proposed settlement.  Def. Brf. 6,7, ECF No. 23.  Following an in-person conference with the parties to address the issues raised in the motion, the Court issued a written Order directing the parties to submit briefing on the issue of whether court approval of the proposed settlement was required.  See Order, June 5, 2012, ECF No. 16.

Upon consideration of the parties' positions and the appropriate law, the Court held, on December 13, 2012, that bona fide disputes of FLSA claims require judicial approval of a proposed settlement.  ECF No. 21. The Court further directed the parties to submit the proposed settlement along with applicable case law,

"addressing whether the compromise settles a bona fide dispute and is a fair and reasonable resolution of the claims." Order 9, Dec. 13, 2012, ECF No. 21. Briefing on this issue was completed on January 3, 2013 and the case was reassigned to the undersigned on January 17, 2013.

Under the terms of the proposed settlement, plaintiff Deitz will receive $3000.00 for the settlement and release of all claims arising from his employment with defendant. Def. Brf., Exh. A, ECF No. 23-1. He will receive an additional $2000.00 for obtaining the complete dismissal of this lawsuit in its entirety and with prejudice. Id. The remaining three opt-in plaintiffs will each receive $500.00 for the settlement and release of all of their claims arising from their employment with Budget. Def. Brf., Exhs. B-D, ECF Nos. 23-2–23-4.

## II. Discussion

The FLSA was enacted for the purpose of protecting all covered workers from substandard wages and oppressive working hours. Barrentine v. Arkansas-Best Freight System, 450 U.S 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); 29 U.S.C. § 202(a). Congress recognized that "due to unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of

goods in interstate commerce." Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706-07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The provisions of the statute are mandatory and not subject to negotiation and bargaining between employers and employees because allowing waiver by employees or releases of employers would nullify the purposes of the act. See Lynn's Food Stores, Inc. v. United States Dept. of Labor, 679 F.2d 1350, 1352 (11th Cir. 1982), O'Neil , 324 U.S. at 707, D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946).

Although the Third Circuit has not addressed the issue, its district courts have taken the position stated by the Eleventh Circuit in Lynn's Food Stores that court approval is required of proposed settlements in a FLSA lawsuit brought under 29 U.S.C. § 216(b). See, e.g., Cuttic v. Crozer-Chester Med. Ctr., 868 F.Supp.2d 464 (E.D.Pa. 2012) (Robreno, J.), Morales v. PepsiCo, Inc., 2012 WL 870752 (D.N.J. Mar. 14, 2012) (Thompson, J.), Brumley v. Camin Cargo Control, Inc., 2012 WL 300583 (D.N.J. Jan. 30, 2012) (Linares, J.), Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (Falk, M.J.) And in the December 13, 2012 Order, for the reasons stated therein, this Court adopted the same position. ECF No. 21. Accordingly, this Court must scrutinize the proposed settlement of the parties and determine if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." See Lynn's Food Stores, 679 F.2d at

4

1354, Altenbach v. Lube Center, Inc., 2013 WL 74251, at *1 (M.D. Pa. Jan. 4, 2013) (Kane, J.)

Thus, without direct guidance from the Third Circuit regarding the applicable standard for assessing settlement agreements under the FLSA, the Court looks to the considerations set forth in Lynn's Food Stroes. See e.g., Brumley, 2012 WL 1019337, Cuttic, 868 F.Supp.2d at 466, Lignore v. Hospital of University of Pennsylvania, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007) (Pratter, J.) We also find the analysis conducted by the court in Collins v. Sanderson Farms, Inc., 568 F.Supp.2d 714 (E.D. La. 2008) (Berrigan, J.), to be directly on point and will consider that analysis in the instant matter. See Order, Dec. 13, 2012, ECF No. 21 (directing the parties to submit briefing utilizing the analysis in Collins).

The guiding principle of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is ensuring that an employer does not take advantage of its employees in settling their claim for wages. See Collins, 568 F.Supp.2d at 719. Therefore, the Court believes that its role in the matter at hand is governed by substantive labor rights as much as it serves as an appropriate facilitator to affect a fair settlement between the parties. See Id. This is especially important here where plaintiffs are proceeding pro se and might be

5

especially susceptible to overreaching behavior by their employer.

   A.   Bona Fide Dispute

      1.   Legal Standard

A bona fide dispute is one in which there is some doubt as to whether the plaintiff would succeed on the merits through litigation of their claim. Collins, 568 F.Supp.2d at 719-20. If there is no question that a plaintiff is entitled to the compensation they seek under the statute, then any settlement allows the employer to negotiate around those mandatory requirements, effectuating a waiver of plaintiff's rights. Id. It follows then that a bona fide dispute is one involving factual, and not legal, issues, making it more likely that a settlement reflects a reasonable compromise of actual issues in dispute between the parties. See Lignore, 2007 WL 1300733, at *3-4 (the extent of the claimed overtime and the precise calculation of the settlement figure reflects a factual dispute over the hours worked). In the December 13, 2012 Order, the Court declined to decide whether the dispute between the parties was bona fide, given the fact that defendant had yet to file an answer to the complaint, and, therefore, to deny any of plaintiffs' factual allegations. ECF No. 21.

      2.   Discussion

The parties do not disagree that the dispute between them was bona fide.

But only the defendant provides argument on this issue. Nevertheless, the Court must explore this issue more deeply in order to ensure that Budget has not simply sought a carte blanche waiver of plaintiffs' statutory rights under the FLSA. This does not appear to have been the case here.

Although the mere filing of a lawsuit does not ensure that a dispute is <u>bona fide</u> per se, it provides at least some assurance of an adversarial context, which weighs in favor of finding that a dispute is <u>bona fide</u>. The settlement at issue occurs squarely within the bounds of the adversarial system. Plaintiffs initiated the instant litigation in federal district court by and through their counsel Peter Winebrake, Esquire, and R. Andrew Santillo, Esquire. Compl., ECF No. 1. And, although plaintiffs now proceed <u>pro se</u>, and the settlement offer was obtained without the involvement of counsel, the Court addressed this matter in its June 4, 2012 in-person conference and subsequently granted plaintiffs' motion to have their counsel withdraw and to thereafter proceed <u>pro se</u>. The fact that attorneys were present – at least at one point in the litigation – to represent the interests of all parties provides further support that an actual dispute exists. Thus, the Court cannot say that the defendant has circumvented the adversarial system in an attempt to avoid its legal obligations under the FLSA. Despite these procedural assurances of fair play, the Court must consider the substantive allegations and

determine whether factual issues, specific to these parties, are actually in dispute.

The complaint alleges that plaintiff Deitz worked as a roofer for defendant's roofing company in Shamokin, Pennsylvania from April 2004 to October 2011. Compl. ¶ 11, ECF No. 1. While employed, plaintiff claims that he and the other hourly workers were not paid overtime compensation despite working between "50-70 hours during typical weeks." Id. at ¶¶ 13-14. He further alleges that they were not paid at all for "many of their working hours." Id. at ¶ 15.

Defendant responds to these allegations for the first time in its Brief Regarding the Fairness of the Settlement Pursuant to the December 13, 2012 Order.[1] ECF No. 23. There, defendant explains that prior to the filing of the instant litigation, these very allegations formed the basis of an earlier dispute between plaintiff Deitz and defendant when Deitz was represented by his initial counsel, Kevin Lovitz, Esquire. Specifically, defendant points to correspondence exchanged between Budget and Mr. Lovitz, in December 2011 and January 2012 regarding allegations that Deitz was being underpaid for the work he performed. Def. Brf., Exhs. E,F, ECF Nos. 23-5, 23-6. In connection with these claims, Budget advised Deitz's counsel that Deitz was a laborer, not a roofer, for the company and was paid accordingly. Def. Brf. 4, ECF No. 23. Budget further

---

[1] Because settlement talks began shortly after the filing of the lawsuit, no answer to the complaint was ever filed.

informed Mr. Lovitz that it believed Deitz was not accurately reporting the number of hours he worked in any given week and pointed to findings from the Pennsylvania Department of Labor and Industry showing that Deitz's actual earnings for numerous pay periods throughout 2008 -2011 were significantly higher than he reported, leading to an investigation of Deitz by that agency. Def. Brf., Exh. F, ECF No. 23-6. The claims initiated by Mr. Lovitz were never pursued in a court of law or otherwise resolved.[2] Rather, according to defendant, Deitz retained new counsel and filed the instant lawsuit on April 17, 2012. Def. Brf. 4, ECF No. 23.

Budget's response to the allegations in plaintiffs' complaint mirror its response to the prior dispute involving Mr. Lovitz – that plaintiffs' rate of pay was based on their classification as laborers and not roofers, and that Deitz misstated the number of hours he worked, exaggerating some and underreporting others. These responses – supported by documentation – call into question the factual underpinning of plaintiffs' claims and present a legitimate question as to FLSA coverage. See Collins, 568 F.Supp.2d at 723. Accordingly, the Court concludes that there exists a bona fide dispute over FLSA coverage in this case.

B.    Fair and Reasonable Settlement

---

[2] Budget claims that its requests for information from Deitz were never responded to and the matter was simply dropped. Def. Brf. 4, ECF No. 23.

Having concluded that the parties present a bona fide dispute amenable to negotiation and settlement before the Court, we now turn to the proposed settlement itself to determine whether it is a fair and reasonable compromise of the disputed issues.

1.  Legal Standard

It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes. In general, settlement is the preferred means of resolving litigation, Williams v. First Nat'l Bank, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910), and there remains a "strong presumption" in favor of finding a settlement fair, Collins, 568 F.Supp.2d at 720.[3] The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution. Id.

Although courts have utilized Fed. R. Civ. P. 23[4] in evaluating the fairness of a proposed settlement under FLSA collective action suits, the Rule does not control such actions and the Court may use its discretion in fashioning appropriate

---

[3]This general rule should be taken with a grain of salt in the context of FLSA settlements, where any settlement that is not judicially-approved, is prohibited outright.

[4]Fed. R. Civ. P. 23(e) governs court approvals of class action settlements.

standards for approving settlement of actions brought under 29 U.S.C. § 216(b). See Collins, 568 F.Supp.2d at 721. Many courts have adopted the same factors used in considering whether a class action settlement is fair and reasonable in FLSA collective action suits by analogy. See Id. The Court finds this approach generally appropriate and will adopt or vary these factors in light of its special role in the settlement of FLSA claims. See Order, Dec. 13, 2012, ECF No. 21.

2. Discussion

In Girsch v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit set out nine factors which have been used to assess the fairness and reasonableness of a proposed settlement in a class action lawsuit: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. See In re Baby Products Antitrust Litigation, 708 F.3d 163, (3rd Cir. 2013) (reaffirming use of the Girsch factors). This Court employs the Girsch

factors to evaluate the facts in the instant litigation as follows:

    a. The complexity, expense, and likely duration of the litigation

Cases requiring great expenditures of time, money, and other resources on behalf of the parties and the court are good candidates for settlement. See In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 318 (3rd Cir. 1998). Although this case is not a particularly complex matter, this factor weighs in favor of allowing the proposed settlement. As Defendant points out, the expense of litigating this case will quickly overcome the monetary value of the claims at issue. In fact, the proposed settlement amount exceeds an estimate of the case made by plaintiff's former counsel during settlement negotiations. See Def. Brf. 11, ECF No. 23. The parties agree that an early resolution is in everyone's best interest. The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. See Craig v. Rite Aid Corp., 2013 WL 84928, at *9 (M.D.Pa. Jan. 7, 2013) (Jones, J.) (the continued drain on judicial resources weigh in favor of settlement).

    b. The reaction of the class to the settlement

This factor is not directly applicable to the instant settlement as the entirety of the "class" consists of four plaintiffs, all of whom wish to settle this matter in accordance with the terms of the proposed settlement agreement. Indeed, the plaintiffs sought the discharge of their counsel expressly in order to settle this

matter. Thus, this factor – although not entirely analogous – also weighs in favor of finding the settlement offer fair and reasonable.

     c. The stage of the proceedings and the amount of discovery completed

In approving a class action settlement, the Court must find that the parties have an "adequate appreciation of the merits of the case before negotiating." In re Prudential Ins. Co., 148 F.3d at 319 (citing In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 813 (3rd Cir. 1995)). Such a requirement helps to ensure that negotiations are informed, and the extent of discovery serves as an indication of the amount of information the parties can reasonably be expected to possess. Admittedly, little discovery has been conducted in this proceeding. An answer to the complaint has not been filed and the only motion practice has been done in connection with the proposed settlement. Be that as it may, the parties have an adequate appreciation of the merits, sufficient to warrant reasonable settlement negotiations. As discussed above, plaintiffs have been communicating with defendants regarding the issues raised in this lawsuit prior to commencement of the instant litigation. See Def. Brf., ECF No. 23; and see Craig, 2013 WL 84928, at *9 (an appreciation of the merits of the dispute is evidenced by the regular communications between the parties for more than four years). Additionally, plaintiffs proceed pro se in this matter so they have been

13

directly negotiating with defendant. As such, there is no risk that self-interested counsel is seeking a resolution of the claims on terms that are most beneficial to counsel alone without regard for the interests of the parties. It stands to reason that the parties themselves are in the best position to appreciate the merits of their case and there is every indication here that they do.

            d.      The risks of establishing liability and damages, and maintaining the class through trial

These factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefit of an immediate, certain settlement. In re Prudential Ins. Co., 148 F.3d at 319. The risk of maintaining the class throughout trial is not applicable here where there is no such putative class that may be decertified or modified at any time during the litigation. See In re School Asbestos Litigation, 789 F.2d 996, 1011 (3rd Cir. 1986). Given the obstacles faced by plaintiffs in establishing liability in this matter, these factors weigh heavily in favor of finding a fair and reasonable settlement.

The sheer uncertainty of the factual claims at issue in this litigation suggests that establishing liability and damages by plaintiffs is remote. This is particularly true in light of the documentation from the Pennsylvania Department of Labor and Industry showing significant discrepancies between Deitz's reported and actual

14

earnings.  See Def. Brf., Ex. F, ECF No. 23-6.  These uncertainties are buttressed by the claim by defendant – and undisputed by plaintiffs – that Deitz has now recanted the allegations contained in the complaint.  Without these factual underpinnings, the complaint is without merit.

Plaintiffs also undoubtedly face the uncertainty of defending against dispositive motions to dismiss and for summary adjudication.  These pleadings will likely raise questions of law regarding how overtime compensation is calculated and whether or not plaintiffs were properly classified as "laborers" or "roofers."  See Craig, 2013 WL 84928, at *9 (these considerations weigh in favor of settlement).  In light of the substantial risks, delineated above, these factors likewise weigh in favor of settlement.

     e. The ability of the defendants to withstand a greater judgment

This factor considers whether the defendant could withstand a judgment for an amount significantly greater than the proposed settlement.  See In re Prudential, 148 F.3d at 321.  In the instant action, however, this factor is irrelevant to the inquiry, as the record includes no evidence related to the Defendant's ability to pay an amount greater than the settlement, nor is there any indication that this factored into settlement negotiations.  See In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516, 537-38 (3rd Cir. 2004) (lack of evidence regarding defendant's ability to

pay rendered this factor irrelevant). Thus, this factor weighs neither in favor of nor against settlement.

      f.  The reasonableness of the settlement in light of the best possible recovery and considering all the attendant risks of litigation

The last two factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. Ideally, this assessment should include comparing the value of damages that plaintiffs would likely recover if successful, offset by the risk of not prevailing, with the amount of the proposed settlement. See In re General Motors, 55 F.3d at 806. But no such concrete formula is required. See In re Prudential Ins. Co., 148 F.3d at 322. Where, as here, calculating the "best possible recovery" for the plaintiffs is exceedingly speculative, the reasonableness of the settlement can be fairly judged by looking at the nature of the settlement itself and taking into consideration the risks of litigation. Id. As discussed above, plaintiff's former counsel estimated the value of the claims to be $3000.00. Under the terms of the proposed settlement, Dietz alone receives that amount together with $2000.00 for attorneys fees and costs. Def. Brf., Ex. A, ECF No. 23-1. Considering the sheer uncertainty that plaintiffs would receive *anything* if this case were to proceed to trial, such a settlement appears reasonable.

## III. Conclusion

Therefore, in accordance with the above, the Court finds that the proposed settlements constitute a fair and reasonable resolution of a bona fide dispute over the FLSA provisions at issue in this litigation.

An appropriate order follows.

                                                 s/ Matthew W. Brann
                                                 Matthew W. Brann
                                                 United States District Judge